WARDEN v. SAWYER.

VENDOR AND PURCHASER—LAND CONTRACTS—PRINCIPAL AND AGENT —ACCOUNTING.

Where defendants, vendees in a land contract, constituted plaintiff, vendor, as their agent to look after the premises while they were away, collect the rent, apply $25 thereof upon the contract, and use the balance, $7, to pay taxes, make repairs, etc., without limiting plaintiff to said $7, they are bound by his action even if he has gone further than they intended in making said repairs in response to the demands of the tenant, and on appeal the decree dismissing the bill for an accounting will be reversed and the case remanded to the court below for determination of the amount due.

Appeal from Kent; Perkins (Willis B.), J.   Submitted July 5, 1921.   (Docket No. 116.)   Decided July 19, 1921.

Bill by Charles H. Warden against John W. Sawyer and another for the cancellation and foreclosure of a land contract. From a decree dismissing the bill, plaintiff appeals. Reversed and remanded.

*John M. Dunham,* for plaintiff.

*Wykes & Averill,* for defendants.

BIRD, J. The bill of complaint was filed in this case praying for a cancellation and foreclosure of a certain land contract. In the event this relief should be denied then an accounting between the parties was prayed. Relief was denied and plaintiff's bill dismissed. The premises in question are known as 338 Beulah street, S. E., in the city of Grand Rapids. They were owned in October, 1918, by one Barth who, on the 15th day of that month, sold them to defendants on a land contract for $3,800. This contract was in the usual form and provided that the consideration be paid at the rate of $25 per month and interest at the rate of 6 per cent. Soon after this contract was executed the premises were sold by Barth to plaintiff and the land contract assigned to him. On February 15, 1919, defendants leased the premises to one Gauthier for one year at $32 a month. About this time defendants concluded to leave Grand Rapids for a time, so they took Gauthier to plaintiff and an arrangement was made whereby Gauthier should, in their absence, pay the monthly rent direct to plaintiff. It was agreed between defendants and plaintiff that $25 of the rental money should be applied to their contract, and the remaining $7 per month should be applied to the regular taxes, water taxes and repairs. With this arrangement made defendants left Grand Rapids for Detroit. After remaining there for a time they went to British Columbia, where they remained for several months.

A few months after defendants' departure the tenant, Gauthier, began to demand improvements and repairs. Plaintiff yielded to these importunities and did painting and decorating in the house, made repairs and extension to the gas plumbing and replaced certain plaster, or stucco work, which had fallen off from the outside of the house. While making these repairs plaintiff learned that the December, 1919, taxes had not been paid. The July taxes were nearly due. The $7 per month surplus did not meet these expenditures. Plaintiff claims he made a bill of the expenditures and sent it to defendants, demanding payment. He got no response. Finally, the forepart of 1920, he declared the contract forfeited and sent notice thereof to defendants with the reasons therefor. On April 3, 1920, he sold the premises on a land contract to one Mack, who was in his employ. At this juncture of affairs defendants returned and took possession of the property. Trouble arose at once between them over the expenditures. Defendants claimed that had plaintiff devoted the excess of $7 per month to taxes, very little, if anything, would be due him, and further that the expenditures for repairs were unauthorized. Being unable to reach an agreement plaintiff filed this bill to adjust the matters of difference. At the conclusion of the hearing the chancellor announced that he declined to enforce the forfeiture claimed but would order an accounting. Subsequently a decree was signed by him dismissing plaintiff's bill, with no mention of an accounting.

We agree with the chancellor in his refusal to forfeit the contract. The default was not of such a character as to merit forfeiture. But we think the chancellor's first impression to order an accounting was the proper one. We are not informed why the chancellor changed his mood, but quite likely he was influenced by the tenders which defendants made into

court. The controversy has the appearance of being a good faith one. Had plaintiff applied the surplus of $7 per month to taxes alone and made no repairs, there would be very little owing him. Defendants claimed the repairs were unauthorized. Plaintiff claims he was authorized to make the repairs. In this conflict lies the whole difficulty. The testimony of Mrs. Sawyer throws some light on this question and has a tendency to corroborate the testimony of the plaintiff. She testified:

"_Q._ What arrangements did you make about making repairs and paying taxes while you were gone?

"_A._ Well, no more than it was to come out of the rent, out of the seven dollars.

"_Q._ Who was to be the judge where to spend the money?

"_A._ Mr. Warden."

It is clear from this testimony that defendants, before going away, constituted the plaintiff as their agent to collect the rent, apply $25 a month to their contract, and use the remaining $7 for taxes and repairs. They also left it to plaintiff's judgment to decide what repairs were to be made. Evidently, defendants thought the repairs would be limited to the money left after paying taxes, but this does not expressly appear. Having given plaintiff the authority, without limitation, we are of the opinion that defendants should be ordered to pay for the repairs. They committed this question to the judgment of the plaintiff, and even though he has erred and gone farther than it was contemplated, the defendants should be bound by what he did. While plaintiff may have gone farther in making repairs than was contemplated by either of the parties at the time, it appears they were reasonably necessary and have added to the value of the premises. There should be an accounting and plaintiff should be allowed the items of taxes, gas

plumbing and repairs to outside of house, also the decorating and painting, and such other repairs as were reasonably necessary. For this purpose the case will be remanded to the Kent circuit court for the chancellor to determine what these items were and how much should be paid for them. To this sum should be added payments due on the contract. When the entire amount due is fixed by the court defendants will have 30 days in which to make payment thereof. If payment be made the decree will be modified as indicated and affirmed. In the event of defendants' default in making payment, plaintiff will be given a decree in conformity with the prayer of his bill. In view of the tenders made into court by defendants no costs will be allowed either party in this court.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.